## MARKS *vs.* BANK OF MISSOURI.

1. An agreement by the holder of a bill of exchange, giving time to the acceptor, will not release the endorser, unless the agreement be made upon a sufficient consideration. To discharge a security, the contract must be such as will prevent the creditor from suing the principal debtor.

2. It is not necessary that a consideration should be adequate in point of value, in order to be *sufficient.* If the least benefit or advantage be received by the promisor from the promisee or a third person, or if the promisee sustain the least injury or detriment, it will constitute a sufficient consideration to render the agreement valid.

3. The Bank of Missouri, as holder of a bill of exchange, agreed with the acceptor to receive from him twenty per cent. on the amount of the bill every four months, and interest in advance until the bill should be fully paid, and that no suit should be brought against the holder or endorser if the payment should be made as agreed upon. In pursuance of this agreement, one payment was made by the holder, but no further payment was made. It was contended by the endorsor, that the payment of the interest in advance was a good consideration for the agreement to give time to the holder, and consequently discharged the endorsor. *Held:* That if the Bank had the right to receive the interest in advance, there was no sufficient consideration for the promise; and if the contract was usurious, it could not have availed the Bank, for the usurious interest might have been recovered after it was paid; that the contract did not prevent the Bank from suing, as the money might have been returned or tendered, and the contract would have thereby been rescinded.

## APPEAL from St. Louis Court of Common Pleas.

GEYER and DAYTON, *for Appellant.*

1. There is no evidence of sufficient notice to the appellant, of the dishonor of the bill. The clerk of the Bank states, that he left a notice at the counting-room of the appellant, which he believed was made out by the notary in New Orleans, and forwarded by mail to St. Louis. But, upon being cross-examined, he admits that he never examined the notice, did not know its date or what it contained, or even whether it was signed by the notary.

There is no evidence whatever as to the form or substance of the paper left at the counting-room of the appellant. True, the clerk calls it a notice of protest, but, upon his own assumption, he gives it that name in perfect ignorance of its contents. It does not appear to have been opened or examined by any of the witnesses who have testified in the case, and for aught they know, and for aught

that appears, was a blank piece of paper, or had relation to some other matter than the dishonor of the bill in question; or, though intended to be a notice of that fact, was entirely defective in substance.

The law, it is true, prescribes no particular form for the notice; yet it does require it to contain certain matters of substance; and the party seeking to charge an endorser must affirmatively prove that the notice complies with the law in this respect. The notice must explicitly state what the bill is, and that payment has been refused by the drawer; and the contents of the notice must be proved either by parole testimony, or by producing a copy made by the witness at the time of making or seeing the original.—*Vide* 3 Kent's Com., 107, 108; Chitty on Bills, 9th American edit., 550; Johnson *vs.* Haught [et al., 13 John's. Rep., 470; 9 Peters' Rep., 33; 21 Wendell's Rep., 10.

2. Had the notice been shown to be sufficient in point of substance, the service of it, as proved in this case, was not good.

It seems to have been merely left at the counting-room of the appellant. No fact is proved to justify this mode of service, and, in the absence of such proof, the service must be deemed insufficient.—*Vide* 3 Kent's Com., 106; Chitty on Bills, 9th American edit., 502; 6 Peters' Rep., 250; 10 Johns. Rep., 490.

3. The payment of interest in advance for four months from the maturity of the bill, upon the sum remaining due, after deducting the one-fifth paid, was a good consideration for the agreement to give that time, and the agreement, thus made, discharged the endorser. There being no pretence that the time was given with either his knowledge or consent.

As to what constitutes a good consideration for a contract, *vide* 2 Kent's Com., 463; Chitty on Contracts, 4th American edition, 29 *et seq.*; 2 Peters' Rep., 170; 8 Mass. Rep., 300; 1 Caine's Rep., 45.

As to the effect of giving time in such cases, *vide* 3 Kent's Com., 111, 112; Chitty on Bills, 9th American edit., 441 *et seq.*, and cases there cited; Me. Lemore *vs.* Powell, 12 Wheaton, 554; Shaw *vs.* Griffith, 7 Mass. Rep., 494; Planter's Bank *vs.* Selman, 2 Gill and Johns., 230.

BOWLIN *and* WOODRUFF, *for Appellee.*

Two questions are presented—

1. Whether the holder of a bill after protest, giving time without consideration, discharges the endorser?

2. Whether receiving partial payments, and interest, for the usual period of bank-loans in advance, by which the plaintiff merely forbore to sue the acceptor, is such a giving of time, upon valuable consideration, as discharges the endorser?

On both these propositions the appellee assumes the negative, and claims the rule of law to be, in such cases, "That the endorser to a bill is only discharged from liability when the holder, for a *valuable consideration*, upon an *agreement* which binds him from suing on it, *gives time.* That mere forbearance to sue, and receiving partial payments on the bill, never discharges the parties to it.

In support of this doctrine, the following cases are cited:—Law Library, vol. 1,

p. 78 *et seq.*; also, p. 109 *et seq.*; Bingham's Rep., vol. 4, contained in Sergeant & Rawle's Select Cases, vol. 16, p. 127; Wheaton's Digest, vol. 2, p. 533; Wendell's Rep., vol. 5, p. 501 *et seq.*; Hammond's Digested Index, vol. 1, p. 188; Condensed U. S. Rep., vol. 6, p. 636; Chitty on Bills, p. 442 *et seq.*, and note 1.

SCOTT, *Judge, delivered the opinion of the Court.*

This was an action of assumpsit, brought by the appellee against the appellant, upon a bill of exchange drawn by J. W. Gibson, on John Riggin, and by him accepted, payable to the order of Holman and Axtell, at the Commercial Bank of New Orleans, endorsed by Holman and Axtell and by the appellant, for the accommodation of John Riggin, and discounted for him by the appellee.

On the trial of the cause, Riggin, the acceptor of the bill, being released, testified that before the maturity of the bill he made an assignment of his property for the benefit of his creditors; that the assignment contained provisions for the payment of the bill in suit by instalments, one of twenty per cent. on the amount of the bill at its maturity, and twenty per cent. every four months thereafter: that shortly after he informed the cashier of the bank of his assignment, and the provisions it contained for the payment of the bill in question, and asked the cashier to accede to the arrangements for the payment of the bill made in the assignment.

This he understood the cashier to agree to.  The cashier further said, that the bill should be returned to the plaintiff at maturity, and held for payment as before stated; that the bill was returned to the plaintiff at maturity, and witness immediately paid her one-fifth of the face of the bill, and interest in advance on the balance for four months from the maturity of the bill, and agreed to pay the plaintiff one-fifth, or twenty per cent. on the amount due in said bill, every four months thereafter, until the bill should be fully paid, and at the time of each payment, interest in advance was to be paid by the witness for four months on the balance.  This arrangement was made by the cashier of the bank, who at the same time agreed that no suit should be brought against the endorsers of the bill, or against witness, if the future instalments and interest should be paid as agreed upon; and that if he, witness, thus paid them, he should have the requisite time.  No further payment was ever made upon the bill.  The defendant endorsed the bill solely for the accommodation of the witness.

The court, on the trial, gave the jury the following instruction, amongst others, which was excepted to, viz.: if they believe the Bank accepted 20 per cent. of the bill from Riggin, together with four months' interest, in advance, on the balance, and also that the Bank, upon the understanding that such payment of twenty per cent., and interest in advance, should be repeated every four months, forbore to sue the acceptor, this does not constitute such a giving of time as will discharge the defendant.

There was a verdict and judgment for the plaintiff, and the court refusing a new trial, this cause is brought here by the defendant, Marks.

There can be no doubt of the correctness of the proposition made by the appellee, that an agreement, giving an acceptor time, without the consent of the

endorser, in order to release the endorser, must be upon a sufficient consideration. To discharge a surety, the contract must be such as will prevent the creditor from suing the principal debtor. It is unnecessary that the consideration should be adequate in point of actual value, the law having no means to decide upon this matter. If the least benefit or advantage be received by the promisor from the promisee, or a third person, or if the promisee sustain any, the least injury or detriment, it will constitute a sufficient consideration to render the agreement valid. It was held at this term of the Court, in the case of Turner *vs.* Crigler, that the executing a new note by the maker to an assignee as the payee, was a sufficient consideration to support a promise by the assignee to the maker, as he was thereby relieved from the trouble and inconvenience of proving the assignment in an action on the note.

But, from the view we take of this subject, the decision of this question is not material. Either the Bank had or it had not the right by law to receive interest in advance. If that right was conferred by law, then the payment of interest in advance was no consideration for the promise. If the Bank had not the right to take interest in advance, then the payment of it, in consideration of forbearance to sue, was usurious. (Chitty on Bills, 102.) If the contract was usurious, then, so far as the excess of lawful interest was concerned, it was of no avail to the Bank, for it might have been recovered the next moment after it was paid. Such a contract did not prevent the Bank from suing, as the money might have been returned or tendered, and the contract would have thereby been rescinded.

As to the point made relative to the sufficiency of the notice to the defendant of the dishonor of the bill, no question was made in the court below in regard to the sufficiency of the evidence, and it cannot be noticed in this Court.

Judgment affirmed.

TOMPKINS, *Judge.*—(*Separate opinion.*)

The Bank brought suit against Marks in assumpsit. The first count is special, on a bill of exchange made by one John W. Gibson, on the 4th day of December, 1839, and also bearing that date, directed to one John Riggin, by which said Riggin is required to pay to the order of Holman & Axtell, at, &c., the sum of $1680, for value received, four months after the date, &c. The bill came to the hands of Marks by endorsement, and he passed it to the Bank. Riggin accepted the bill.

There were several common counts, all for the same consideration.

The defendant, Marks, pleaded several pleas, in substance alleging that it was agreed by and between the said plaintiff, then the holder of the said bill, and said Riggin, the acceptor thereof, without the consent of the defendant, in consideration that the said John Riggin had made an assignment of his property and effects for the benefit of his creditors, and in said assignment had provided for the payment of the said bill of exchange to the plaintiff, in certain instalments, to wit, twenty per cent. on the amount of the said bill at the maturity thereof, and twenty per cent. every four months thereafter on the same sum due, until the same should be

fully paid; that the said plaintiff should give the said acceptor time for the payment of said bill, in accordance with the provisions of the said assignment, and the said bill should, after the maturity thereof, be returned to, and retained by, said plaintiff, &c.

The plaintiff denied the plea.   Verdict and judgment were given for the plaintiff.   The defendant moved for a new trial, and, his motion being overruled, he appealed to this Court.

John Riggin, the acceptor of the bill sued on, being first released by the defendant, was produced as a witness.   He stated, that some time in March, 1840, and previous to the maturity of the bill, he made an assignment of all his property and effects to trustees, for the benefit of his creditors; that the assignment contained provisions for the payment of this bill, in instalments of twenty per cent. on the amount of the bill, at its maturity, and twenty per cent. every four months thereafter on the sum due on said bill till it should be paid; that shortly after, he informed the cashier of the plaintiff of his agreement, and the provisions contained in it for the payment of the bill in question, and asked the cashier to give him time for the payment of the bill as mentioned in the assignment.   This he understood the cashier to agree to.   The cashier further said that the bill should be returned to the plaintiff at maturity, and witness immediately paid the plaintiff one-fifth of the face of the bill, $336, and interest in advance on the balance for four months from the maturity of the bill, and agreed to pay the plaintiff one-fifth, or twenty per cent., on the amount due, every four months thereafter, until the bill should be paid, and at the time of each payment witness was to pay interest for four months, on the balance, in advance.   This arrangement was made with the cashier of the Bank, who, at the same time, agreed that no suits should be instituted against the endorsers of the bill, or against witness, if the future instalments and interest should be paid as agreed upon, and that if he, witness, thus paid them, he should have the requisite time.   No further payment was ever made upon the bill.   The defendant endorsed the bill solely for the accommodation of the witness.

Henry Shoulds, the cashier of the plaintiff, produced the following extract from the minutes of the board of directors of the Bank, viz.:   "Whereas Mr. John Riggin has made an assignment of all his property for the benefit of his creditors generally, and this Bank having good individual security on the paper now due and protested, be it resolved, that suit be not instituted against him at the ensuing term of court, provided, the interest of the Bank in said assignment is not injuriously affected thereby."   The witness had examined the records of the board, and stated that this was the only extract that had relation to the matter, and that the above extract included the agreement made between Riggin and the Bank; to the fullest extent.   Witness stated that, as far as he knows, no other arrangement or agreement was ever made by him or the Bank, in reference to this matter.   Witness stated that Riggin paid one-fifth of the bill; did not recollect, but presumed he had paid interest in advance for four months from the maturity of the bill.

The court then instructed the jury as follows:—"It is a rule of law, that if the holder of a bill, by a binding agreement, contracts to give time to the acceptor, the

endorser is thereby discharged. To make such an agreement binding, it is necessary that the holder should have received some consideration therefor. If the jury believe that the Bank of Missouri, for a consideration given to her by John Riggin, the acceptor of the bill, agreed, after the bill became due, to give him time for the payment thereof, the jury will find for the defendant. If the jury believe the Bank accepted 20 per cent. of the bill from Riggin, together with four months' interest on the balance in advance, and also that the Bank, upon the understanding that such payment of twenty per cent., and interest, in advance should be repeated every four months, forbore to sue the acceptor, this does not constitute such a giving of time as will discharge the defendant. If the jury believe that the Bank of Missouri made any agreement with Riggin by which she was, for any length of time, prevented from suing Riggin, they will find for the defendant."

Judgment being given for the plaintiff, the defendant moved for a new trial, for divers reasons.

Something was said also in the argument about the insufficiency of the notice of protest. No question about that appears to have been raised in the Circuit Court, and I will content myself with observing, that I am not sensible that the notice was insufficient, and that if it were otherwise, the defendant should first have objected to it in the court of original jurisdiction.

The 28th section of the act to charter the Bank provides, that "All bills, bonds, notes, and every contract or agreement on behalf of the company, shall be signed by the president, countersigned and attested by the cashier; and the funds of the company shall in nowise be held responsible for any contract or engagement whatever, unless the same shall be executed as aforesaid."

This contract to give time to the acceptor, in order to be binding on the Bank, ought to have been reduced to writing, and signed by the president, and countersigned and attested by the cashier. But Riggin, the acceptor, does not even pretend that he had any agreement with the Bank. He held some conversation with the cashier, and he understood the cashier to agree to give him time. It is difficult to believe that a merchant of the city of St. Louis could be ignorant that this contract ought to have been with the Bank, if it were intended to have any obligatory force. But it is contended that, notwithstanding the law, presumptions will arise against corporations. "There is no reason why its assent to, and acceptance of, grants and deeds beneficial to it, should not be inferred from its acts, as well as that the same inference should be drawn from the acts of individuals." (Angel and Ames, p. 136.) It would be indeed a violent presumption against the Bank, that it should be presumed to intend to give the acceptor time on a bill protested for non-payment. This could not, then, be presumed, because it is not beneficial to the Bank. There was nothing in the treaty proposed, either of benefit to the Bank, or of injury to the acceptor. The Bank had a right to the amount of the bill, and it was his duty to pay it, and when he paid a part only, that, in law, could be no consideration for further indulgence on the part of the Bank.

The judgment of the Court of Common Pleas ought, in my opinion, to be affirmed.