57  503
177a 647
57  503
e155 154

FARMERS' & TRADERS' BANK, Respondent, *vs.* W. G. HARRISON, *et al.*, Appellants.

1. *Promissory note—Extension—Discharge.*—An extension granted to the principal debtor in a promissory note in consideration of usurious interest paid in advance, will not operate a release of the surety.

2. *Usury—Criminality—Illegality.*—Usury is not now considered a crime, so as to render invalid every contract into which it enters. The contract is illegal, only to the extent of the forbidden excess of interest.

3. *Powers, limitations upon.*—Limitations upon powers to be exercised by corporations and by individuals, are to be interpreted alike in both cases by the terms in which they are expressed, and without reference to whether the powers be inherent or conferred.

4. *Corporations, acts of, void in part or in whole, rule touching.*—If a corporation does an act not within the authorized objects of its charter, or performs an authorized act by a prohibited method, the act will be wholly void. But if the departure or violation apply only to the measure of extent or quantity in an authorized procedure, then the act will be valid up to the prescribed limit, and void only as to the excess.

5. *Corporations, loans by—Usurious interest.*—The statute authorizing the formation of banking corporations with power to loan money " at a rate of interest not to exceed ten per cent. per annum," does not render void a note taken for a loan at a greater rate of interest.

6. *Corporations, usurious contract with, governed by the general law.*—Usurious contracts made with corporations are governed by the general law relating to interest and usury; and suits upon them must be disposed of in like manner as in cases of such contracts between private persons.

*Appeal from Audrain Circuit Court.*

*Forrist & Ladd*, for Appellants.

I. As to interest, the corporation is controlled by its charter and not by the general law of usury of the State. (U. S. Bank vs. Owen, 2 Pet., 527; Assignee of Darby vs. Boatmens' Savings Bank of St. Louis, not yet reported; State Bank vs. Coquilard, 6 Ind., 332; Ryan vs. Valandingham, 7 Ind., 416.)

II. The charter of respondent gave to it no power to loan at a higher rate than ten per cent., and so any contract for a loan at a higher rate would be void. (Bank of Chillicothe vs. Swayne, 8 O., 257; Bank of Wooster vs. Stephens, 1 O. St., 233; VanAlta vs. State Bank of Ohio, 9 O. St., 27-33; Utica Ins. Co. vs. Caldwell, 3 Wend., 302; Beach vs. Fulton Bank, 3 Wend., 583.)

Some of the cases hold that the note only given for the money loaned would be void, while an action in favor of the corporation on the common count for money loaned, could be maintained against the borrower, but all hold the note void, and in the case at bar the suit is founded on the note only.

The declaration asked by respondent should not, and that asked by appellants should, have been given.

III. The extension of time of payment of a note by the holder for a valuable and independent consideration paid by the principal for a definite time, by agreement between the holder and principal, without the knowledge and consent of the surety will discharge the surety. (Burge Sur., 203-4; Chitt., Bills, 408-9.)

*G. B. Macfarlane*, for Respondent.

I. The charter of respondent is the general law of the State upon Savings' Banks. (Art. VI, ch. 37, Wagn. Stat., p. 329.) By its charter, authority is given to loan money on real estate or personal security. The rate of interest to be charged is fixed at ten per cent. per annum, and a greater rate forbidden. No penalties or forfeitures are provided for exceeding the prescribed rate of interest, and the charter is silent as to the effect of taking a higher rate of interest than is fixed by the law.

II. The charter gives respondent the power to loan money; that is its principal business. It is true that a corporation can exercise no power not expressly given, but when a power is given a corporation to do an act it possesses the power to the same extent as an individual possesses it, and is subject to the same penalties and forfeitures for exercising that power in a manner different from, or in excess of, the prescribed manner of exercising it. (Farmers' Bank vs. Burchard, 33 Vermont, 372; Morse Banks and Banking, 17.) In our State an individual is forbidden to loan money at a rate exceeding ten per cent. per annum. (2 Wagn. Stat., 783.) If no penalty were attached to the violation of this statute the contract of an individual would be *ultra vires*

and void, according to the earlier authorities. But sec. 5 prescribes a penalty for an infraction of the law. The charging more than ten per cent. is not wrong in itself, but is wrong because prohibited by law. The same may be said of respondent's charter. There can be no question that it is competent for the legislature to say what shall be the consequences of a violation of the law. (Rock-River Bank vs. Sherwood, 10 Wis., 239.) We should look to the general laws of the State on the subject of interest to find the effect of an excessive charge of interest, because :

1st.—Had the legislature intended otherwise, it would have prescribed the consequences in the charter, but the charter being silent we look to the general laws.

2nd.—Because courts never inflict penalties, and a heavier one could not be inflicted upon a Banking Institution than the avoidance of the debts due it. (1st. Mass., 167 ; 2 Johns., 339 ; Planters' Bank vs. Snodgrass, 4 How. [Miss.], 586.)

3rd.—The general law of the State, prescribing penalties for the violation of the interest law, by its express terms, includes artificial as well as natural persons.

4th.—It is a well settled rule that where the contract of a corporation is part void and part legal, the same rule of construction prevails as in the contract of natural persons; that which is legal will be enforced if it can be separated from that which is illegal. (7 How. Miss., 523, *et seq.*)

5th.—The overwhelming weight of authority supports this position. (See Planters' Bank vs. Snodgrass, 4 How. [Miss.], 586 ; Fleckner vs. Bank of the United States, 8 Wheat., 355 ; 3 Pet., 36 ; Maine Bank vs. Samuel Butts, 9 Mass., 52 ; Philadelphia Loan Co. vs. Towner, 13 Conn., 154 ; Bank of Alexandria vs. Manderville, 1 Cranch, C. C. R. 552 ; National Exchange Bank vs. Moore, 1 Bank Reg., 123 ; Rock-River Bank vs. Sherwood, 10 Wis., 239 ; Durkee vs. The City Bank of Kenosha, 13 Wis., 216 ; Browmer vs. Height, 18 Wis., 102 ; Planters' Bank vs. Sharp, 4 S. & M., 75 ; Grand Gulf Bank vs. Archer, 8 S. & M., 151 ; Com'l Bank vs. Nolan, 7 How. [Miss.], 508 ; McLean, assignor, etc. of Manard vs. Lafayette Bank,

3 McLean, 587; Veazie Bank vs. Paulk, 40 Me., 109; Lyon vs. Bank of Alabama, 1 Stew., 468; Saltmarsh vs. Planters' and Merchants' Bank of Mobile, *Id.*, 761; Farmers' Bank vs. Burchard, 33 Vt., 346; Morse on Banks and Bank'g, 17; Bank of Louisville vs. Young, 37 Mo., 407; Marks vs. The Bank of the State of Missouri, 8 Mo., 318. It will be seen, from the authorities cited, that the question has been considered and passed upon by the courts of Maine, Massachusetts, Connecticut, Vermont, Wisconsin, Alabama and Mississippi, and all concur with singular unanimity that the effect of a bank charging excessive interest is to be ascertained from the general law of the State on the subject of interest. In the following cases the usury laws have been applied to the transactions of banks *sub silentia* without question on either side. (Bank of Burlington vs. Durkee, 1 Ver.. 404; *Id.*, 430; 12 Pick., 586; United States Bank vs. Waggener, 9 Pet., 378; 1 Pet., 43.)

IV. The first special defense was not a plea of the statute of usury. To take advantage of the usury law, a party is required to plead it specially. The demurrer was properly sustained unless the note was void. (Rock-River Bank vs. Sherwood, 10 Wis., 239.) The effort in this case was to avoid the whole contract. (Speaker vs. McKenzie, 26 Mo., 255.)

V. The declaration of law given respondent by the court was proper. A contract to extend the time of payment of a note in consideration of the payment of usurious interest is not a contract which the law will enforce. Wiley vs. Hight, 39 Mo., 133; Marks vs. The Bank of the State of Missouri, 8 Mo., 319; Chitt. Bills, 102.)

LEWIS, Judge, delivered the opinion of the court.

This was a suit against the appellants and W. G. Harrison upon a promissory note for $300. A default was taken against W. G. Harrison, and the appellants answered with two defenses: 1. That the note was given for money loaned at usurious interest, and was therefore void. 2. That appellants

were only sureties, and were released from liability by reason of an extension given, for valuable consideration, to the principal debtor, without their knowledge or consent.

To the first defense plaintiff filed a demurrer for insufficiency in law, which was sustained by the court. Issue was joined on the second, and tried by the court, which found for the plaintiff, and rendered judgment in his favor for the full amount of the note and interest.

As to the second of these defenses, the record presents but little difficulty. The extension granted was founded upon the payment of usurious interest in advance, by way of consideration. It is well settled by adjudications of this and other courts that such a consideration creates no legal obligation on the holder to refrain from suit upon the note, and hence there can be no release of the sureties. The court's declaration of law to this effect was unobjectionable. (Marks vs. Bank of Missouri, 8 Mo., 316; Wiley vs. Hight, 39 Mo., 130.)

The first defense introduces a subject which has been much discussed in other States, and in the federal courts. The point made by the appellants is, that while by our general law the taking of too much interest by a natural person does not destroy the principal contract, but only incurs certain minor losses to the wrong-doer, yet a corporation, whose charter limits the amount of interest for which it may agree, cannot exceed that limit and make a valid contract; that the power to loan and the limit as to interest, constitute the elements of a single grant; and as both are made essential, if either be wanting, the grant fails, and no contract can result for lack of power to make it.

The plaintiff became a corporation under Art. VI of the law concerning private corporations, (ch. 37, Wagn. Stat., 329) by which it is "permitted to carry on the business * * * * * of loaning money on real estate and personal security at a rate of interest not to exceed ten per cent. per annum." It appeared from the evidence, that the loan in this case was at the rate of about eighteen per cent. per annum.

Hitherto, loans made by banking corporations upon usurious interest, have received the same treatment in Missouri as transactions of the same sort between private persons. When the defense was successfully maintained, the courts have habitually rendered judgment for the principal sum, and ten per cent. interest, setting apart the interest to the county school fund, as directed by the general law. The appellants here demand, with an imposing array of judicial indorsements, that we revolutionize this custom, and declare that notes given under such circumstances to a bank are absolutely void, and the lender cannot even get back the money advanced to the borrower. A proposition so presented and so affecting the large moneyed interests of a commercial people, may well demand a careful examination of its merits.

The chief authority used to sustain this proposition is the case of the Bank of the United States vs. Owens, (2 Pet., 527). The charter of the corporation plaintiff contained this provision : " The bank shall not be at liberty to purchase any public debt whatever, nor shall it take more than at the rate of six per cent. per annum for or upon its loans or discounts." Mr. Justice Johnson, delivering the opinion of the court, used this language : " The question here propounded has relation exclusively to the legal effect of a violation of the provision *in the charter* on the subject of interest, and does not bring in question the operation of the statute of usury of Kentucky upon the validity of this contract. To understand the gist of the question, it is necessary to observe, that, although the act of incorporation forbids the taking of a greater interest than six per cent., *it does not declare void* any contract reserving a greater sum than is permitted. Most if not all acts passed in England and the States on the same subject, declare such contracts usurious and void. The question then is, whether such contracts are void in law *upon general principles*.

" The answer would seem to be plain and obvious, that no court of justice can, in its nature, be made the hand maid of iniquity. Courts are instituted to carry into effect the laws of a country. How can they then become auxiliary to the

consummation of violations of law ? * * * * There can be no civil rights where there can be no legal remedy, and there can be no legal remedy for that which is in itself illegal."

Hence, it being admitted that the contract was for a rate of interest greater than six per cent., the court declared the note given to be void. This is claimed to be as conclusive for the appellants as any proposition can be made by direct authority from an exalted source. But there are many reasons why it fails to determine here the main question involved.

It will be observed that the court, although referring to the charter, treats it as inoperative for the purposes of the inquiry, and refuses to test the question by the extent or limitation of power granted to the bank. It proceeds upon the general "iniquity" or unlawfulness of the transaction, which would apply as well to the case of an individual as to that of a corporation. Its position is fortified by reference to the "acts passed in England and the States," which "declare *such contracts* usurious and *void*."

We have in Missouri no such legislative acts. The "iniquity" of an usurious loan has long since disappeared from our jurisprudence, except as to the excess above the author ized rate of interest. Even in courts of equity, everywhere— which are considered as the purest tribunals—when usury is established, the contract will be enforced for the sum loaned, and the borrower compelled to pay it back.

The United States Supreme Court (4 Pet., 205) says, that "usury is now only considered an illegal or immoral act, because it is prohibited by law." Says another authority: "Usury has now ceased to be a crime. It is unlawful to the extent that it is made so by statute, and no further." (7 How. Miss., 535.)

It would seem, then, that the measure of illegality or immorality, is the extent of the prohibition. And that applies not to the *loan*, in which there is no moral vice, but only to the forbidden excess of interest.

It is to be observed, further, that in the Owens case, the questions submitted from the United States Circuit Court in Kentucky, distinctly predicated that the contract was founded upon a "*corrupt* and *unlawful* agreement." So that the inquiry in the Supreme Court was really confined to a field in which, as already shown, our present investigation has but little interest. But in any view of the case, it can never be said that the record of that august tribunal has committed it against the intrinsic validity of every note tainted with usury.

In Fleckner vs. The Bank of the United States, (8 Wheat., 355) the same court had under consideration the provision in the United States bank charter above quoted. Then it said : "The taking of interest by the bank beyond the sum authorized by the charter would be a violation for which a remedy might be applied by the government ; but as the act of congress does not declare it shall avoid the contract, it is not perceived how the defendant could avail himself of this ground to defeat a recovery." This was before the decision in the Owens case. But long afterward, in The Bank of United States vs. Waggener, (9 Pet., 378) the same court, per Mr. Justice Story, quotes and adheres to the above passage from the opinion in the case of Fleckner. So, that, in the opinion of the Supreme Court, a chartered limitation upon the rate of interest for a bank loan will not, *per se*, avoid the contract so as to avail the borrower.

The next case relied upon is Bank of Chillicothe vs. Swayne (8 Ohio, 257). The general statute of Ohio entitled creditors to "interest at the rate of six per centum per annum, and no more." In the bank charter the phraseology was, "that said corporation shall not take more than at the rate of six per cent per annum on its loans or discounts." No penalty was affixed in either case. The court held that, in contracts between individuals, a reservation of excessive interest would not render the contract void, and that the creditor might recover the principal sum with lawful interest ; but that in the case of a corporation, the whole contract was void, because the limitation, in effect, withheld the power to make any such

contract. This precisely fits the views of the appellants here.

The reasoning of the Ohio court is based upon two fundamental propositions: 1. That natural persons have an inherent right to contract, subject only to such positive restraints as the law may impose; while corporations have only a conferred right to make contracts, and cannot make any but such as are expressly authorized. 2. That when a corporation is empowered to do anything in a particular way, it cannot effectually do that thing in any other way; so that, if the prescribed method be departed from, the act is void. These propositions form also a basis for the very able argument of appellants' counsel here. As to the first, I cannot see what difference it makes whether the power to contract be inherent or conferred, when the limitation upon its exercise is the same in either case. Let it be admitted that the natural person has, inherently, an unlimited power of making loans. Suppose the same general unlimited power of making loans, be conferred by the legislature upon a corporation. Both will then stand upon the same footing, as to all the methods or effects of an exercise of the power. If, then, the legislature impose upon both the same limitation, surely both will still occupy the same ground; for if equals be added to equals the sums will be equal. The *origin* of the qualified power in either possessor is a thing of the past. Its operation and tendencies belong to the present and future, and they must be the same in both cases. The individual in Ohio had a general power to loan money, subject to a specific limitation. The Ohio incorporation was invested with the same general power, subject to the same specific limitation, expressed in nearly the same words. Why should a disregard of the limitation work a total destruction of the power in one case and not in the other?

As to the second proposition, the court lost sight of a distinction universally recognized. If power be given to a corporation to do an act in a particular way—as to loan money on personal security—and it adopt a different method of per-

formance—as by making a loan on real estate—the act is *ultra vires* and void. If, however, the departure apply, not to the method itself, but purely to extent or quantity in an authorized feature, then the act is good up to the limit of extent or quantity, and void as to the excess. The test inquiry is, whether part of the undertaking may be cut off, and what remains be in fulfillment of the law. Coke says: "Where a man doth that which he is authorized to do, and *more*, there it is good for that which is warranted, and void for the rest." (Coke, Litt. 258.)

Not to multiply illustrations, the familiar case of a partnership will suffice. Each partner has a general authority to make contracts within the scope and objects of the partnership. But if one make a single contract embracing matters both within and without the scope and objects of the association, it is universally held to be good as to the former, and void as to the latter. The rule applies equally to corporations. Some other cases are cited by appellants, but all their force is derived from the two just disposed of. A majority are cases in which corporations undertook to perform acts wholly outside of the scope and objects of their organization.

The high authorities which hold a contrary view on the subject of our inquiry are very numerous. Their general doctrine is to the effect that a charter prohibition upon the rate of interest, whether with or without a penalty, will not avoid a loan for a greater rate, except as to the excess. In one class of cases it is held that, while such an usurious loan may so violate the charter as to incur a forfeiture of the franchise, yet the corporation may maintain a suit upon the note given for the principal sum and lawful interest. And in all it seems to be agreed that, whatever the effect of such a general charter restriction otherwise, the borrower cannot be allowed to keep the money upon the strength of his own complicity in an unlawful act. In some, the plaintiff is required to maintain his action on the count for money loaned. In many others, the declaration on the note is held to be sufficient. The cases are too numerous to be cited here. Upon the whole,

we consider the weight of authority overwhelmingly against the position taken by the appellants.

But an argument is drawn from the peculiar structure of our statutes which deserves notice. The general interest law (Wagn. Stat., 782) provides that "the parties may agree, in writing, for the payment of interest not exceeding ten per cent. per annum," etc., and that "no person shall, directly or indirectly, take for the use or loan of money or other commodity, above the rates of interest specified, etc." It then proceeds to define the consequences of violation. The defense of usury being sustained in a suit upon any bond, note, etc., the court shall render a judgment for the principal sum and ten per cent. interest ; of which the principal sum only goes to the plaintiff and the interest to the county school fund. Comparing this statute with the one relating to corporations, it is claimed that as these defined consequences are not appended or recognized in the latter, therefore they are not to be applied at all, and the only consequence left for a violation of the law by a corporation, must be that the contract shall be held void. It is already shown that, in our opinion, if the corporation statute be considered alone, an usurious contract will not, by reason of it, be wholly void. It is not perceived how the enactment of another law, applying, as is claimed, not to corporations at all, but only to individuals, can reverse that interpretation.

The true judicial process is, to take all the laws in force at a given time, upon the same subject matter, as if uttered in one breath, or with a single purpose. We are not to treat them as the vagaries of a man bereft of reason, who announces a fixed intent in one moment, and its opposite in the next. It is safe and fair to bring together in familiar language the several effects of different enactments. We have a statute (Wagn. Stat., 887) which, after declaring that plural words shall be deemed to include " any single matter, party or persons," prescribes that "where any subject matter, party or person is described or referred to by words importing the singular number or the masculine gender, several matters and

33—VOL. LVII.

persons, and females, as well as males, and *bodies corporate as well as individuals*, shall be deemed to be included." Now, by the method of collocation above suggested, the effect produced will appear about thus: 1. Corporations may loan money "at a rate of interest not exceeding ten per cent. per annum."

2. Parties, whether persons or corporations, "may agree in writing for the payment of interest not exceeding 10 per cent. per annum."

3. No person or corporation "shall directly, or indirectly, take for the use or loan of money above the rate of interest specified," etc.

4. If in any suit upon a note, bond, etc., it shall be made to appear that the foregoing rules have been violated, the court shall render judgment for the principal sum, and 10 per cent. interest, setting apart the interest to the county school fund, etc. If the provision of the general law applying to persons were different as to rate of interest or other essential particular from that found in the charter of the corporation, then the effect might be otherwise; for, while considering the provisions together, the general would necessarily yield to the special. But here is no conflict, repugnance or disagreement; only a general result, which harmonizes—though reached by a different process—with adjudications in nearly all the States where the charters of corporations and the general interest laws stand in similar relations to each other, as in Missouri.

We conclude, that when a note given to a banking corporation, created under the general statutes, is found to be tainted with usury, the results will be the same, and none other, as in the case of a note given to a natural person.

The court below erred, therefore, in overruling the demurrer, and in giving judgment to the plaintiff for the whole amount of the note and interest. Its judgment is reversed and the cause remanded.

The other judges concur.