THOMAS HAYS, WILLIAM STORY and CHARLES ELLENBERGER, Appellants, v. HENRY F. PUMPHREY and L. C. PUMPHREY.

#### Division One, March 1, 1910.

1. **CONVEYANCES: Recording Deed in Another County: Notice.** The record of a deed imparts notice to subsequent persons only when it is recorded in the county in which the land lies. So that where Lee conveyed land in Shannon county to Pumphrey in 1858 and the deed was recorded in Oregon county in 1860 and in Shannon county in 1874 and in 1860 Lee conveyed the land to Vogal for a recited consideration of $400, and that deed was recorded in 1873, Vogal took without constructive notice; and

being without actual notice or knowledge of Lee's prior conveyance to Pumphrey, and the consideration being valuable, and the land being wild and uncultivated and not in the actual possession of anyone, Vogal took the legal title, and his subsequent grantees did also as against Pumphrey's grantees.

3. **ADVERSE POSSESSION: Proof.** Testimony of a defendant that he and his grantors had "been in possession of the land in controversy for thirty-five years," is simply an expression of his own conclusion as to who had been in possession; and, in the face of his own testimony that the land was wild and uncultivated, and that no one lived upon or exercised any act of ownership except to pay taxes, does not establish possession.

4. ————: **Limitations: Paying Taxes.** Where the land was wild and uncultivated and the legal paper title is in plaintiffs, defendants cannot deprive them of their title by simply paying taxes thereon for thirty-five years.

Appeal from Shannon Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED (*with directions*).

*Jno. C. Brown* and *Ed. J. Shuck* for appellants.

(1) The act transferring the land in controversy from Oregon county to Shannon county was passed with the emergency clause, and was approved and took effect on March 12, 1859. Laws 1859, p. 413. (2) The law in 1858, and ever since that date, has required deeds to be recorded in the county where the land conveyed is situated. Hence the record of respondent's deed in Oregon county did not impart notice. R. S. 1855, sec. 40, p. 364; same as R. S. 1899, sec. 923; Geer v. Lumber & Mining Co., 134 Mo. 93; Gwynn v. Frazier, 33 Mo. 89. (3) "No instrument in writing shall be valid except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder for record." R. S. 1855, sec. 42, p. 364; same as R. S. 1899, sec. 925.

(4) The land being unoccupied and the deed to Pumph-
rey being invalid, there was no reason and no law
whereby appellants could attack said deed until the
enactment of 650 in 1897, and they instituted this ac-
tion in less than ten years after that statute was
passed. Burkham v. Manewal, 195 Mo. 507; Haarstick
v. Gabriel, 200 Mo. 244; Mason v. Crowder, 85 Mo. 532.
(5) The thirty-year Statute of Limitation cannot be
invoked by respondents who have never been in actual
possession. Haarstick v. Gabriel, 200 Mo. 243. (6)
Payment of taxes and protecting land against timber
thieves were not possession. Neither do they work any
estoppel against the true owner. Himmelberger v.
McCabe, 220 Mo. 154; Carter v. Hornbeck, 139 Mo. 239;
Burkham v. Manewal, 195 Mo. 500. (7) Respondents'
grantor, Pumphrey, having failed to record his deed
in the proper county, it was invalid as to appellants'
grantor; it is not even charged he had any actual
notice thereof. Strong v. Whybark, 204 Mo. 341. (8)
Appellants' grantor having placed his deed on record,
this was all the notice he was required to give to any-
body of his title. Bales v. Perry, 51 Mo. 453; Throck-
martin v. Pence, 121 Mo. 60; Mylar v. Hughes, 60
Mo. 115; Herman on Estoppel, sec. 968, p. 1092.

WOODSON, J.—This suit was instituted in the
circuit court of Shannon county, by the plaintiffs
against the defendants, under section 650, Revised
Statutes 1899, to ascertain and determine title to the
north half of section twenty-seven, township twenty-
six north, range four west, situate in said county.

The petition was in conventional form and prac-
tically followed the language of the statute.

The answer was as follows (formal parts omitted):

"Now this day come Henry F. Pumphrey and
L. C. Pumphrey, and for their answer admit that they
own and claim title to the land described in plantiffs'
petition, and for further answer deny each and every

other allegation there contained, and having answered, ask to be discharged with their costs in this action."

A trial was had before the court, without the intervention of a jury, which resulted in a decree perfecting the title to said land in defendants. After moving unsuccessfully for a new trial, and saving all proper exceptions, plaintiffs duly appealed the cause to this court.

At the trial it was admitted by the parties to the cause that the real estate involved was, on February 3, 1859, patented by the United States to one Henry Lee.

The plaintiffs then offered and read in evidence a general warranty deed from the patentee, Henry Lee, to John Vogal, conveying the land in controversy, dated March 7, 1860, consideration $400, and recorded in said Shannon county on the 13th day of November, 1873.

The plaintiffs then read in evidence a deed from the said John Vogal and Jane Vogal his wife, conveying all the land in controversy to William Burns, dated the 5th day of September, 1874, and duly recorded in Shannon county, State of Missouri.

The plaintiffs next read in evidence a deed from the said William Burns and Mary Jane Burns, his wife, to these plaintiffs, William Story, Thomas Hays and Charles Ellenberger, dated October 4, 1876, and recorded November 11, 1876, in the deed records of Shannon county.

The plaintiffs here rest their case.

The defendants to sustain the issues on their part offered to read in evidence book "K," at page 245, of the deed records of Shannon county, Missouri, being the record of a warranty deed from the patentee, Henry Lee, to William F. Pumphrey, dated November 10, 1858, purporting to convey the land in question, in consideration of $320 paid. The plaintiffs objected

to the introduction of the deed offered in evidence for
the reason:

First: Because the deed offered in evidence pur-
ports to convey land in Oregon county.

Second. Because the deed offered in evidence was
recorded in Oregon county.

Third. Because the deed offered in evidence was
recorded in Oregon county and the record of a deed
recorded in Oregon county is no notice to a party
buying real estate in Shannon county, and the plain-
tiffs further object to the introduction of the deed
offered in evidence for the reason that the grantor
in said deed had heretofore executed a conveyance of
said real estate to the plaintiffs' grantor, which had
been made a matter of record in the deed records of
Shannon county, Missouri, prior to the recording of the
deed offered in evidence. Which objection was by the
court overruled, and said deed was admitted in evi-
dence, to which action of the court in overruling the
plaintiffs' objection and in admitting said deed, the
plaintiffs then and there excepted.

Said deed was general warranty deed, duly ac-
knowledged December 10, 1858, and recorded May 31,
1859, in the office of the recorder of deeds of Oregon
county. Said deed was also filed for record in Shan-
non county July 21, 1874 at 4 p. m., and recorded on
July 22, 1874.

It was admitted by both the plaintiffs and the de-
fendants that the land described in the deed offered
and read in evidence and the land involved in this con-
troversy was a part of Shannon county at the time of
the filing of said deed for record in Oregon county,
May 31, 1859, and has been a part of said Shannon
county ever since the 12th day of March, 1859.

The defendants next offered in evidence deed rec-
ord "N" at page 150, being the record of a deed, dated
February 1, 1876, from or purporting to convey the
interest of William F. Pumphrey and wife in and to

the same land to Henry F. Pumphrey and L. C. Pumphrey. The plaintiffs objected to the deed offered in evidence, for the reasons that the deed purports to convey the interests of William F. Pumphrey and wife, whose grantor had heretofore conveyed said real estate to the plaintiffs' grantor, and the deed had been made a matter of record in the deed records of Shannon county. The court overruled the objection, and the deed was admitted, to all of which plaintiffs excepted. Said deed was a general warranty deed, duly acknowledged and recorded in the office of the recorder of deeds of Oregon county, November 13, 1876. This deed also bore the additional filing mark: "Filed and recorded December 4, 1876, at 4 o'clock p. m. John M. Dougherty, Recorder."

The defendants to sustain the issues on their part introduced as a witness Henry Pumphrey, who testified as follows:

"Q. You are one of the defendants, are you not? A. I am.

"Q. State who has the possession of the land in controversy?"

Objected to by plaintiffs, for the reason that the question elicits or requires only the opinion of the witness. Which objection of the plaintiffs was by the court overruled; to which action of the court in overruling the plaintiffs' objection, the plaintiffs then and there excepted.

"A. The defendants are in the possession of the land in controversy.

"Q. How long have the defendants been in the possession of the real estate?"

Objected to by the plaintiffs, for the reason it requires and the answer could be nothing more nor less than the opinion of the witness. Which objection was by the court overruled; to which action of the court in overruling the plaintiffs' objection, plaintiffs then and there excepted.

"A. The defendants have been in possession of the land in controversy for about thirty-five years.

"Q. State the years that yourself and your grantors have paid the taxes on the land in controversy?"

Objected to by the plaintiffs, for the reason that the witness, first, cannot testify as to the acts of his grantors; second, because it is not the best evidence; third, because the defendants have not as yet accounted for the loss of the tax receipts. Which objection was by the court overruled, to which action of the court in overruling the plaintiffs' objection, the plaintiffs then and there excepted.

"A. Myself and my grantors have paid the taxes since 1858."

Witness cross-examined by plaintiff:

"Q. Have you ever, at any time, improved the land in controversy? A. I have not.

"Q. Have you ever, at any time, either yourself or by any other person for the defendants, improved any of the land in controversy? A. No.

"Q. This land then is wild and uncultivated timber land? A. Yes. The defendants' possession consists in having parties to look after the land and to keep away trespassers."

This is all the evidence in the case.

I. There are but two questions presented for determination by this record—the first is, did the subsequently executed warranty deed of Henry Lee, the patentee, to John Vogal, dated March 7, 1860, and recorded in Shannon county, November 13, 1873, by virtue of its prior recordation, have the force and effect of conveying to said Vogal the title to the land in controversy by force and operation of our registry laws, and thereby invalidate the prior warranty deed executed by said Lee, the patentee, to the defendants' grantors, William F. Pumphrey and wife, dated No-

vember 10, 1858, but not recorded in Shannon county until July 21, 1874?

There is no pretense that Vogal had any notice or knowledge of the existence of the deed from Lee to William F. Pumphrey until long after his deed from Lee was executed and recorded; nor is there any question but what Vogal paid a valuable consideration for the land in controversy. In addition to these facts, the evidence shows that the land was wild and uncultivated, and was not in the actual possession of any one.

This identical question was presented to this court in the case of Strong v. Whybark, 204 Mo. 341, where the same sections of the registry act were construed. There the court said:

"There is no evidence whatever in this record tending to show that Josephine Hayden had any notice or knowledge of the execution of the prior unrecorded warranty deed from Seth D. Hayden to said Moore, at the time he made the quitclaim deed to her, nor is there any evidence of fraud or collusion between Seth D. Hayden and Josephine Hayden. Both William A. Moore and Josephine Hayden neglected for years to file their deed for record, as provided for by section 923, Revised Statutes 1899, yet the latter filed her deed about six years prior to the time when he filed his.

"The statute provides that 'no such instrument in writing shall be valid, except as between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder for record.' [R. S. 1899, sec. 925.]

"According to the provisions of this section, the deed from Hayden to Moore was invalid and conveyed no title to the land in controversy in so far as Josephine Hayden was concerned, because she had no notice of its execution at the time she filed her deed for record. If the exception mentioned in the section just

quoted was the only exception or limitation to that statute, then there would be no question as to the title of Josephine Hayden and those claiming under her, but the courts upon principles of equity and justice have repeatedly held that if the subsequent purchaser either had notice of the prior unrecorded deed, or if he was a purchaser without having paid a good and valuable consideration for the land, then he would take nothing by his purchase and deed. [Maupin v. Emmons, 47 Mo. 304; Aubuchon v. Bender, 44 Mo. 560.] The question that now presents itself is, was Josephine Hayden a purchaser of the land in question for a good and valuable consideration? The deed recites that the conveyance was made for and in 'consideration of natural love and affection and five dollars to him in hand paid by the party of the second part, the receipt of which is hereby acknowledged.'

"A valuable consideration is defined to be money or something that is worth money. [2 Washburn on Real Prop. (4 Ed.), p. 394; 1 Chitty on Contracts (11 Am. Ed.), 27.] It is not necessary that the consideration should be adequate in point of value. Although small or even nominal, in the absence of fraud it is enough to support a contract entered into upon the faith of it. [Forbs v. Railroad, 107 Mo. App. l. c. 674; Marks v. Bank, 8 Mo. 316; Ridenbaugh v. Young, 145 Mo. l. c. 280; Blaine v. Knapp & Co., 140 Mo. l. c. 251; Anderson v. Gaines, 156 Mo. 664; Green v. Higham, 161 Mo. 333; 6 Am. and Eng. Ency. Law (2 Ed.), p. 694, par. 5.] It seems to us that it would be a useless waste of time and energy to cite authorities in support of the proposition that five dollars or any other stated sum of money in excess of one cent, one dime, or one dollar, which are the technical words used to express nominal considerations, is a valuable consideration within the meaning of the law of conveyancing."

The facts of the case at bar present a much stronger case in favor of the plaintiffs than did the

facts in the Strong-Whybark case, for the reason that here there is no question but what Vogal paid a valuable consideration for the land; and his muniment of title is a warranty deed, while in Strong's it was a quitclaim deed.

The fact that the deed from Lee to William F. Pumphrey was recorded in Oregon county prior to the date when Vogal's deed was executed and recorded in Shannon county, where the land was located, does not alter the application of the rule of law as before stated, for the reason that the record of a deed only imparts notice to subsequent purchasers when the deed is recorded in the county where the land is situate, and this deed to Pumphrey was not recorded in Shannon county until after the plaintiffs and their grantors acquired the title from Lee.

That case being upon all-fours with this one, it must control us in disposing of the question previously propounded. We, therefore, hold that Vogal took the legal title to the land by virtue of his deed from Lee as against William F. Pumphrey; and that its recordation under the registry act imparted notice to all subsequent purchasers, which include defendants and their grantors.

II. The only other question remaining for determination, is the question of the Statute of Limitations.

While respondents have filed no brief in this court, nor are they represented here by counsel, yet we presume the Statute of Limitations was one of the defenses made by the defendants at the trial in the circuit court; and our reason for so supposing is predicated upon the fact that the record preserves the evidence before quoted, bearing upon the possession of the land. and showing that they paid the taxes thereon. But be that as it may, the only evidence introduced tending to

show adverse possession is the testimony of the witness, Henry Pumphrey, before set out *in haec verba.*

Upon this state of the record the question naturally presents itself, is that evidence sufficient to show title in defendants by adverse possession under the ten-year Statute of Limitations? We think not. While it is true the witness stated that he and those through whom he claims title, had "been in the possession of the land in controversy for about thirty-five years," yet that was clearly the expression of his own conclusion as to who had the possession thereof, for the reason that the record conclusively shows that none of them lived upon or near the land, nor any one else for that matter lived upon the land; nor did they or any one for them ever, at any time, exercise any act of ownership over the land or any part of it except to pay taxes on it, which fact will be presently noticed; but, upon the contrary, it is conclusively shown that the land was wild, uncultivated timber land.

This same witness testified that he and his grantors had paid the taxes on this land since 1858.

We have fully stated all the evidence bearing upon the question of adverse possession, and we have no hesitancy in holding that it is wholly insufficient, under the repeated adjudications of this court, to make out title by adverse possession.

Having reached the conclusion in the former paragraph of this opinion that the legal paper title to the land in controversy was in plaintiffs, then it must follow from the decisions of this court which hold that the title of the real owner of land cannot be transferred to a stranger simply by his payment of taxes thereon for the time required to give title by adverse possession under the Statute of Limitations. [Chapman v. Templeton, 53 Mo. 463; Bollinger v. Chouteau, 20 Mo. 89; Cashman v. Cashman, 50 Mo. App. 663; Id., 123 Mo. 647.]

226 Sup—9

St. Louis v. Tielkemeyer.

The judgment is, therefore, reversed, and the cause remanded with directions to the circuit court to enter judgment for plaintiffs in conformity to the prayer of the petition. All concur.